

**FILED**

**SEP 08 2025**

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

**HIEU MINH LE,**
Register No. 49563-086,
Petitioner,

v.

**WARDEN, FCI MENDOTA,**
Respondent.

Civil Action No. _____

*1:25CV 01156 HBK(PC)*

---

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

---

## I. INTRODUCTION

Petitioner Hieu Minh Le ("Petitioner") is a 38-year-old Asian male, Reg. No. 49563-086, currently incarcerated at the Federal Correctional Institution in Mendota, California ("FCI Mendota"). On August 27, 2021, in *United States v. Le*, Case No. 1:19-cr-00004-JAJ-HCA (S.D. Iowa), Petitioner was sentenced to a term of **120 months' imprisonment**, followed by four years of supervised release, for Conspiracy to Distribute 100 Kilograms or More of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Petitioner's projected good-conduct time ("GCT") release date is October 5, 2029, and his projected statutory release date is October 5, 2028.

Petitioner has been classified by the Bureau of Prisons ("BOP") as **Low/Minimum** risk under the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") system and is fully eligible under the First Step Act ("FSA") to earn Time Credits ("TCs") pursuant to 18 U.S.C. § 3632(d)(4). As a Low/Minimum risk inmate, Petitioner is statutorily entitled to earn **15 days of FSA credit for every 30 days of successful participation** in

Evidence-Based Recidivism Reduction ("EBRR") programming or Productive Activities ("PAs").

Despite this clear statutory entitlement, the BOP has unlawfully refused to award Petitioner any FSA credits for the period **April 5, 2021 through December 14, 2021**—a span of more than eight months during which the BOP's own sentence computation records indisputably credit Petitioner toward service of sentence. By its own calculation, the BOP has recognized April 5, 2021 as the commencement date for GCT purposes, meaning Petitioner was serving his federal sentence for all purposes during this period. Yet the agency has arbitrarily withheld FSA credits for the same time, solely because it failed to assign him to a designated facility with programming opportunities—a circumstance entirely within BOP's control.

Alternatively, even under the BOP's more restrictive interpretation that FSA accrual begins on the date of sentencing, Petitioner is still entitled to credits for the period **August 27, 2021 through December 14, 2021**. During this time, Petitioner remained in BOP custody, met all eligibility criteria, and was prevented from engaging in qualifying programming exclusively due to BOP transfer and holdover delays. In either scenario, the agency's refusal to award credits is inconsistent with the plain text of § 3632(d)(4), violates the statutory command that eligible inmates "shall earn" time credits, disregards congressional intent to incentivize rehabilitation throughout the entirety of an inmate's term, and runs afoul of controlling case law including *Sharma v. Peters*, 2024 WL 140089 (M.D. Ala. Jan. 12, 2024), *Goodman v. Ortiz*, 2021 WL 1085744 (D.N.J. Mar. 22, 2021), and *Hare v. Ortiz*, 2021 WL 391280 (D.N.J. Feb. 4, 2021).

## II. JURISDICTION AND VENUE

This Petition is brought pursuant to 28 U.S.C. § 2241, which authorizes federal courts to issue writs of habeas corpus to prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States." Because Petitioner challenges the execution of his sentence—specifically, the Bureau of Prisons' unlawful failure to apply

statutorily mandated First Step Act Time Credits—§ 2241 is the proper vehicle for relief. *See Rodriguez v. Smith*, 541 F.3d 1180, 1182 (9th Cir. 2008) ("A federal prisoner may file a § 2241 petition to challenge the BOP's execution of his sentence.").

Petitioner is currently confined at the Federal Correctional Institution in Mendota, California ("FCI Mendota"), which is located within the Eastern District of California. Accordingly, venue lies properly in this Court. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (proper respondent is the warden of the facility where the prisoner is confined).

Because Petitioner proceeds **pro se**, his pleadings are entitled to a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (allegations in a pro se complaint are held "to less stringent standards than formal pleadings drafted by lawyers"); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (courts must liberally construe pro se submissions to ensure meritorious claims are not overlooked due to technical deficiencies in pleading). This Court is therefore obligated to "look beyond the labels" and "construe [the petition] in the light most favorable to the petitioner," ensuring that the statutory claims are addressed on the merits. *See Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

Liberally construed, the present petition alleges a straightforward violation of federal law: that the BOP is unlawfully withholding earned FSA credits for time it has already counted toward Petitioner's sentence for all other purposes. As such, this Court has both the jurisdiction and the obligation to review and remedy the agency's error.

---

### III. FACTUAL BACKGROUND

1. **Sentence and Offense**

    On August 27, 2021, in the United States District Court for the Southern District of Iowa, Petitioner was sentenced to **120 months' imprisonment** for Conspiracy to Distribute 100 Kilograms or More of Marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. The Court also imposed a four-year term of supervised

release to follow imprisonment. Petitioner's projected good-conduct time ("GCT") release date is October 5, 2029, and his projected statutory release date is October 5, 2028.

2. **BOP Sentence Computation Start Date**
The Bureau of Prisons' ("BOP") own sentence computation records reflect that Petitioner began receiving credit toward service of his federal sentence on **April 5, 2021—102 months prior to his projected GCT release date**, which is consistent with how the agency calculates time-to-serve under 18 U.S.C. § 3624(b). This start date is a matter of record in BOP's official sentence computation data and has not been disputed by the agency.

3. **Transfer and Holdover Period**
From April 5, 2021 through December 14, 2021, Petitioner remained in continuous BOP custody. During this period, he was repeatedly transferred between facilities and housed in transit or holdover status due to BOP logistical decisions. At no point was Petitioner released from BOP custody or found ineligible for First Step Act ("FSA") Time Credits under 18 U.S.C. § 3632(d)(4).

4. **Impact of BOP Transfers on FSA Accrual**
Because Petitioner was in transit or holdover status during this eight-month period, the BOP failed to place him in a facility where he could regularly participate in Evidence-Based Recidivism Reduction ("EBRR") programs or Productive Activities ("PAs"). The agency then refused to award any FSA credits for this period—not because of Petitioner's conduct or eligibility, but solely because the agency's own transfer process prevented program participation.

5. **Arrival at Designated Facility**
On December 15, 2021, Petitioner arrived at his designated yard at FCI Mendota, where he was finally able to enroll in qualifying programming. From that date forward, the BOP began awarding him FSA credits pursuant to its internal policy.

However, the agency continues to exclude the **April 5, 2021 through December 14, 2021** period from FSA accrual calculations.

6. **Primary Argument Timeframe**

    Because the BOP's own computation already treats April 5, 2021 as the date Petitioner began serving his sentence, the law requires that he also earn FSA credits from that date forward. This amounts to **approximately 129 days of FSA credit** (8.6 months × 15 days per month for Low/Minimum PATTERN risk).

7. **Alternative Argument Timeframe**

    Even if this Court were to adopt the BOP's restrictive position that FSA accrual begins only on the date of sentencing, Petitioner is still entitled to credits for the period **August 27, 2021 through December 14, 2021**—a total of **approximately 54 days of FSA credit**.

8. **Effect on Release Date**

    Awarding either the 129 days (primary argument) or the 54 days (alternative argument) would advance Petitioner's prerelease custody eligibility date and overall release date, ensuring compliance with the statutory mandate that eligible inmates "shall earn" time credits for each period of successful participation while serving their sentence.

---

## IV. LEGAL CLAIMS

### A. Statutory Entitlement Under the First Step Act

1. **The Statutory Mandate**

    Congress enacted the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), in part to "provide for programs to reduce recidivism and to shorten sentences through the earning of time credits." 18 U.S.C. § 3632(d)(4)(A) states in mandatory terms:

*"A prisoner who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits…"*

The statute further specifies that eligible prisoners **earn** 10 or 15 days of credit for every 30 days of successful participation, depending on risk classification. Petitioner, as a **Low/Minimum PATTERN risk inmate**, is entitled to **15 days per 30 days served**.

Nothing in the statutory text permits the BOP to deny credits for periods where the prisoner is in BOP custody and otherwise eligible, simply because the agency has chosen to keep the prisoner in transit or holdover status. To the contrary, § 3632(d)(4)(B) directs that credits "shall be applied toward time in prerelease custody or supervised release" once earned.

---

### B. BOP's Policy Improperly Overrides the Statute

2. **Improper Denial of Credits Due to Transfers**
   The BOP's refusal to award credits from **April 5, 2021 to December 14, 2021** rests solely on the fact that Petitioner was being moved between facilities and was not yet placed in a designated yard with programming access. This is an agency-created barrier. The statute contains no "program access" exception that allows the BOP to withhold credits in such circumstances.

3. **Case Law: Courts Reject BOP's Overreach**

   - *Sharma v. Peters*, No. 2:24-cv-00158, 2024 WL 140089, at 4–5 (M.D. Ala. Jan. 12, 2024): Held that the BOP cannot deny FSA credits for periods following sentencing due to internal policy restrictions, emphasizing that the statute's language controls over agency guidance.

   - *Goodman v. Ortiz*, No. 1:20-cv-07582, 2021 WL 1085744 (D.N.J. Mar. 22, 2021): Ordered BOP to apply FSA credits where the prisoner was eligible but had been prevented from programming for reasons beyond his control.

- o *Hare v. Ortiz*, No. 1:20-cv-14093, 2021 WL 391280 (D.N.J. Feb. 4, 2021): Found that statutory FSA credits accrue for eligible inmates regardless of whether BOP policy at the time permitted application of such credits.

- o *Rodriguez v. Smith*, 541 F.3d 1180, 1182 (9th Cir. 2008): Confirmed § 2241 is the proper mechanism to challenge the BOP's execution of a sentence.

## C. Primary Claim – Accrual from April 5, 2021

4. **BOP's Own Computation Controls**
Petitioner's sentence computation starts April 5, 2021. That date is when, for all other purposes, he is considered to have begun serving his federal sentence. Under the plain text of § 3632(d)(4), he was eligible to accrue FSA credits from that same date. The BOP's contrary position creates an irreconcilable inconsistency: the agency recognizes the time for sentence service but denies it for FSA purposes.

5. **Credit Calculation**
April 5, 2021 to December 14, 2021 = **~8.6 months** in custody. At 15 days per 30 days served for Low/Minimum risk, Petitioner should receive **~129 days of FSA credit** for this period.

## D. Alternative Claim – Accrual from August 27, 2021

6. **Fallback Argument**
Even if this Court adopts the BOP's restrictive view that FSA accrual begins only at sentencing, Petitioner is still entitled to FSA credits from August 27, 2021 to December 14, 2021.

7. **Credit Calculation**
August 27, 2021 to December 14, 2021 = **~3.6 months**. At 15 days per 30 days served, Petitioner should receive **~54 days of FSA credit** for this period.

### E. The Court's Duty to Enforce the Statute as Written

8. **Plain Meaning Rule**

   The Supreme Court has long held that "when the words of a statute are unambiguous, the judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992). Here, Congress used mandatory language—"shall earn"—that leaves no discretion for the BOP to carve out exceptions based on its own logistical shortcomings.

9. **No Deference to BOP Where Statute is Clear**

   In *Loper Bright Enterprises v. Raimondo*, 143 S. Ct. 2429 (2023), the Supreme Court curtailed deference to agency interpretations that conflict with statutory language. Applying that principle here, the BOP's internal policy cannot override Congress's directive.

## V. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1. **Grant the writ of habeas corpus** under 28 U.S.C. § 2241 and find that the Bureau of Prisons has unlawfully withheld First Step Act Time Credits to which Petitioner is entitled under 18 U.S.C. § 3632(d)(4);

2. **Order the Bureau of Prisons to immediately credit Petitioner with all FSA Time Credits earned or constructively earned** for the period **April 5, 2021 through December 14, 2021**—a total of approximately **129 FSA days** of credit, based on Petitioner's Low/Minimum risk classification and the statutory accrual rate of 15 days per 30 days served;

3. **In the alternative,** should the Court find that FSA accrual begins on the date of sentencing, **order the Bureau of Prisons to credit Petitioner with all FSA Time**

Credits for the period **August 27, 2021 through December 14, 2021**—a total of approximately **54 FSA days;**

4. **Order the Bureau of Prisons to immediately recalculate Petitioner's release date and prerelease custody eligibility date** to reflect the application of these credits;

5. **Direct the Bureau of Prisons to promptly transfer Petitioner to the most appropriate form of prerelease custody** (Residential Reentry Center or home confinement) if the recalculation shows that Petitioner is already eligible under 18 U.S.C. §§ 3621(b) and 3624(c);

6. **Award any additional or equitable relief** that this Court deems just and proper, including but not limited to:

## VI. VERIFICATION

I, Hieu Minh Le, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 is true and correct to the best of my knowledge, information, and belief.

Executed on this 3rd day of September, 2025.

HIEU LE

Hieu Minh Le

Reg. No. 49563-086

FCI Mendota

33500 W. California Avenue

Mendota, CA 93640

**CERTIFICATE OF SERVICE**

I certify that on this 3rd day of September, 2025, I placed a true and correct copy of the foregoing Petition for Writ of Habeas Corpus in the prison mailing system, addressed to:

**Clerk of Court**
United States District Court
Eastern District of California
2500 Tulare Street, Suite 1501
Fresno, CA 93721

and to:

**Office of the United States Attorney**
Eastern District of California
2500 Tulare Street, Suite 4401
Fresno, CA 93721

and to:

**Warden**
FCI Mendota
33500 W. California Avenue
Mendota, CA 93640

*/s/ Hieu LE*

Hieu Minh Le
Reg. No. 49563-086
FCI Mendota
33500 W. California Avenue
Mendota, CA 93640