UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIEU MINH LE,<br><br>                    Petitioner,<br><br>        v.<br><br>WARDEN, FCI MENDOTA,<br><br>                    Respondent. | Case No.  1:25-cv-01156-HBK (HC)<br><br>ORDER DENYING RESPONDENT'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS[1]<br><br>(Doc. 11) |

Petitioner Hieu Minh Le, a federal inmate, proceeds pro se petition on a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging the Bureau of Prisons' (BOP) denial of First Step Act earned time credits (ETCs).  (Doc. 1).  Respondent moves to dismiss for failure to exhaust administrative remedies and, alternatively, argues the BOP properly denied ETCs under its implementing regulations. (Doc. 11).  For the reasons below, the motion to dismiss is denied, and the petition is granted in part and denied in part.

## I.  BACKGROUND

In 2021, a jury in the Southern District of Iowa convicted Petitioner of conspiracy to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. § 636(c)(1).  (Doc. 14).

1

and 21 U.S.C. § 846.  On August 27, 2021, he was sentenced to 120-month imprisonment.  *See United States v. Tran et al.*, 1:19-cr-00004-SHL-HCA-3, Crim. Docs. 216, 316 (S.D. Iowa).[2]  Petitioner was designated to FCI Mendota on December 15, 2021; and was housed there when he filed this Petition of September 8, 2025.  (Doc. 11-1 at 3, 6, 15).  His current projected release date, including good time credits, is October 5, 2029.[3]  (*Id*. at 3, 10).

Petitioner contends the BOP unlawfully refused to credit ETCs for time after his federal sentence commenced but before his arrival at his designated BOP facility, in contravention of the First Step Act (FSA).  (Doc. 1 at 3).  He claims entitlement to 129 days of ETCs if calculated from April 5, 2021, or, alternatively, 54 days if calculated from August 27, 2021. (*Id*. at 7-8).  He seeks recalculation of his release and prerelease custody dates and a prompt transfer to the most appropriate form of prerelease custody if warranted.  (*Id*. at 9).

Respondent moved to dismiss the petition on February 4, 2026, arguing Petitioner failed to exhaust administrative remedies and that, in any event, the BOP reasonably interpreted and implemented the FSA in denying ETCs for the period before Petitioner arrived at his designated facility.  (Doc. 11).  Petitioner untimely opposed the motion, on March 18, 2026.  (Doc. 15).  Petitioner acknowledges non-exhaustion but asserts futility because he challenges a BOP-wide regulation and policy.  (*Id* at 7).  Petitioner further argues that the BOP's regulation conflicts with the statutes governing sentence commencement and ETC eligibility.  (*Id* at 2 (citing 18 U.S.C. § 3632(d)(4)).  Respondent does not object to the timeliness of the opposition, and the Court considers it on the merits.

## II. APPLICABLE LAW AND ANALYSIS

### A. Rule 4 Screening and Jurisdiction

Under Rule 4 of the Rules Governing Section 2254 Cases (applicable to § 2241 proceedings), the Court must dismiss a petition if it plainly appears that the petitioner is not entitled to relief.  A motion to dismiss a habeas petition is treated as a request for dismissal under

---

[2] The undersigned cites to the record in Petitioner's underlying SDIA criminal case as "Crim. Doc. _.".
[3] According to BOP, Petitioner has earned 1473 program days, and 705 ETCs, 365 of which are projected to be applied towards early release under the FSA.  (Doc. 11-1 at 7, 11, 17).

Rule 4. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

A court has jurisdiction under § 2241 to review claims that the BOP acted contrary to federal law, violated the Constitution, or exceeded its statutory authority, but not to review individualized ETC determinations made pursuant to 18 U.S.C. § 3632. *Moon v. Thomas*, 787 F. Supp. 2d 1154, 1160 (D. Or. Apr. 1, 2011); *Reeb v. Thomas*, 636 F.3d 1224, 1228 (9th Cir. 2011) (finding that while judicial review is available for BOP actions contrary to federal law or in violation of the Constitution, or claims the BOP exceeds statutory authority, federal courts lack jurisdiction to review BOP's individualized determinations made pursuant to 18 U.S.C. § 3632).

### B. Failure to Exhaust Administrative Remedies

Federal prisoners are generally required to exhaust administrative remedies before filing a habeas corpus petition. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *see also Ward v. Chavez*, 678 F.3d 1042 (9th Cir. 2012). However, the exhaustion requirement is judicially created; it is not a statutory requirement. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54-55 (1995). Because exhaustion is prudential, it is not jurisdictional. *Id*. (citing *Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc*., 811 F.2d 1209, 1223 (9th Cir. 1987)). The BOP's Administrative Remedy Program consists of an informal attempt at resolution (BP-8) followed by three formal levels: (1) a Request for Administrative Remedy (BP-9) filed at the institution where the inmate is incarcerated; (2) a Regional Administrative Remedy Appeal (BP-10) filed at the Regional Office for the geographic region in which the inmate's institution is located; and (3) a Central Office Administrative Remedy Appeal (BP-11) filed with the Office of General Counsel. 28 C.F.R. § 542.10 et seq.

Here, there is no evidence that Petitioner completed the administrative process to the Central office and thus he did not fully exhaust his administrative remedies. Instead, Petitioner contends exhaustion should be excused as futile because he challenges the validity of a BOP regulation applied uniformly systemwide.

3

The Court may waive the exhaustion requirement when administrative remedies are inadequate, irreparable injury may occur without immediate judicial relief, or exhaustion otherwise would be futile. *Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004) ("[D]istrict court's habeas jurisdiction under 28 U.S.C. § 2241 is ordinarily reserved for instances in which no other judicial remedy is available."). While the Court is generally disinclined to waive exhaustion where a petitioner makes claims of futility in the context of earned time credits, under the circumstances of this case the Court finds it appropriate to waive the prudential exhaustion requirement. In this case, Respondent's position is that the BOP's regulation governing when ETC eligibility begins is lawful and controlling, meaning the agency is bound by the very policy Petitioner challenges. (Doc. 11 at 4-8). Because additional administrative review would almost certainly result in denial and would not assist in developing a factual record or allow the agency to correct the alleged legal error, the Court exercises its discretion to waive exhaustion as to Petitioner's facial challenge to the regulation. *See, e.g., Modeste v. Birkholz*, 809 F. Supp. 3d 891, 897-99 (D. Alaska Nov. 10, 2025); *Dunaev v. Engleman*, 2025 WL 2427998 (C.D. Cal. Mar. 27, 2025). *See also Huihui v. Derr*, 2023 WL 4086073, at *3 (D. Haw. June 20, 2023) ("administrative review in this case is not likely to allow the agency to correct its own mistakes and preclude the need for judicial review because the Court disagrees with Respondent's reading of the FSA"); *Jobin v. Warden, FCI-Mendota*, 2024 WL 1367902, at *3 (E.D. Cal. Apr. 1, 2024), *report and recommendation adopted*, 2024 WL 2786898 (E.D. Cal. May 30, 2025).

**C. The First Step Act and BOP Regulations**

The FSA[4] authorizes eligible inmates to earn ETCs for successful completion of evidence-based recidivism reduction programming or productive activities. Under 18 U.S.C. § 3632(d)(4)(A), an inmate earns 10 days of time credits for every 30 days of successful participation, with additional credits possible for certain low- and minimum-risk inmates.[5] The

---

[4]Enacted December 21, 2018, the FSA provided for considerable changes to the federal criminal code, including several prison and sentencing reforms. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

[5] The FSA additionally authorized the BOP to use a risk and needs assessment system, "PATTERN," to designate a prisoner with a minimum, low, medium, or high-risk score. *United States v. DeCaro,* No. 2022 WL 4395905, at *1 n.1 (E.D. Mo. Aug. 23, 2022). Inmates who receive a minimum or low-risk

credits are applied toward prerelease custody or supervised release.

Section 3632(d)(4)(B) prohibits earning ETCs for programming completed (1) before the FSA's enactment or (2) during "official detention prior to the date the prisoner's sentence commences under section 3585(a)."  Section 3585(a) provides that "a sentence of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of a sentence at, the official detention facility at which the sentence is to be served."

By regulation, 28 C.F.R. § 523.42(a) states that an eligible inmate begins earning FSA time credits only after the inmate's "term of imprisonment commences," defined as the date the inmate arrives or voluntarily surrenders at the designated BOP facility where the sentence will be served.  This regulatory definition differs from the statutory definition of sentence commencement in § 3585(a).

### 1.  Commencement of ETC Eligibility

Petitioner argues he became eligible to earn ETCs either as of April 5, 2021 (shortly after the jury verdict, while detained pending sentencing) or as of August 27, 2021 (the date of sentencing), based on the statutory definition of commencement in § 3585(a).  (Doc. 1 at 6-8).  Respondent argues that, under § 523.42(a), Petitioner could not begin earning ETCs until December 15, 2021, the date he arrived at his BOP-designated facility (FCI Mendota).  (Doc. 11 at 4-8).

There is a recognized split among district courts across the country addressing the "tension" between the statutory language in the FSA and the BOP's regulations regarding the "commencement" of a prisoner's eligibility for ETCs.  Many courts, including several in the Ninth Circuit, have concluded that the regulation's narrower definition of sentence "commencement" is inconsistent with the FSA's plain text because it adds an exclusion not found in the statute.  Others have upheld the BOP's approach, focusing on the FSA's risk-and-needs-

score over two consecutive assessments earn an additional five days of time credits for every 30 days of successful participation in evidence-based recidivism reduction (EBBR) programming or productive activities (PA).  18 U.S.C. § 3632(d)(4)(A)(ii).

assessment framework and the practical timing of program assignment. As recently summarized by a district court in the Ninth Circuit:

> [m]ost of those district courts, including several courts within the Ninth Circuit, have rejected the BOP's use of § 523.42(a) or other regulatory provisions to deem a prisoner categorically ineligible to earn FSA time credits during the period between their sentencing and arrival at their designated facility. These courts have generally viewed § 523.42(a) as creating an "additional exclusion" to prisoners' eligibility to earned time credits that is not authorized by the FSA. At the same time, many other district courts, including several courts within the Ninth Circuit, have held that the BOP may lawfully exclude prisoners from earning time credits between their sentencing and arrival at their designated facility. These courts have tended to focus on the interplay between the FSA's provisions regarding earned time credits and its mandate for the creation and use of a risk and needs assessment system "whereby programming is matched to prisoners' needs[.]" According to these courts, prisoners may earn FSA time credits only for successfully participating in programming specifically assigned to them following an assessment of their needs. In practice, then, prisoners are prevented from earning time credits until they arrive at their designated facility, because the BOP waits until then to evaluate their needs and make corresponding program assignments.

*Modeste*, 809 F. Supp. 3d 891 at 899-900 (noting some of the courts analyzed petitioner's claims under the more deferential *Chevron USA, Inc. v. Nat'l Res. Def. Counsel, Inc.*, 467 U.S. 837 (1984) framework that was later overruled by *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 403, 412 (2024)) (collecting cases).

This Court is guided by traditional principles of statutory interpretation. The plain language of the statute is the starting point for its interpretation. *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989). Courts "must exercise their independent judgment in determining whether an agency has acted within its statutory authority," and while the agency may provide guidance, the courts "may not defer to any agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 603 U.S. at 412.

Respondent argues that § 3632(d)(4)(B) is "phrased as a prohibition" and does not create an "affirmative entitlement" for a prisoner to begin earning ETCs as soon as a sentence commences under § 3585(a); thus, "[c]onsidering the statutory ambiguity on that question, this Court should affirm the BOP's reasonable exercise of its delegated authority to implement the FSA." (Doc. 11 at 4-8). This argument is unavailing.

6

The relevant FSA provisions are unambiguous.  *See Yufenyuy v. Warden, FCI Berlin*, 659 F. Supp. 3d 213, 218 (D.N.H. Mar. 7, 2023); *Patel v. Barron*, 2023 WL 6311281, at *4 (W.D. Wash. Sept. 28, 2023); *Huihui*, 2023 WL 4086073, at *2; *Puana v. Williams*, 2024 WL 4932514, at *4 (D. Colo. Dec. 2, 2024)*; Pelullo v. FCC Coleman - Low,* No.  2024 WL 3771691, at *3 (M.D. Fla. Aug. 13, 2024); *Gale v. Warden FCI Milan*, 2025 WL 223870, at *4 (E.D. Mich. Jan. 16, 2025).  Read together, § 3632(d)(4)(A) and (B) directs that a prisoner "shall" earn ETCs for qualifying programming, except for programs completed before the FSA's enactment or during "official detention prior to the date the prisoner's sentence commences under section 3585(a)." Consequently, under § 3585(a), Petitioner's sentence commenced on the date he was received in custody to serve that sentence.  Accordingly, the earliest date he was statutorily eligible to earn ETCs is August 27, 2021, not April 5, 2021.[6]

BOP's contention that § 523.42(a) ties the commencement of ETC eligibility to the date Petitioner arrived at his BOP-designated facility conflicts with the FSA's express statutory language and effectively creates an additional exclusion to eligibility that Congress did not authorize.  *See, e.g., Jobin*, 2024 WL 1367902, at *3-4 (finding regulation conflicts with statute and ordering BOP to recalculate petitioner's ETCs from the date of sentencing); *Huihui*, 2023 WL 4086073, at *5.  Arguably, "[b]y redefining when a prisoner's sentence 'commences' in a way that further restricts when an otherwise eligible prisoner may begin to earn FSA [ETCs], § 523.42(a) creates an 'additional exclusion to general eligibility not found in the FSA's unambiguous eligibility provisions.'" *Modeste*, 809 F. Supp. 3d at 901 (collecting cases) (quoting *Pelullo v. FCC Coleman-Low*, 2024 WL 3771691, at *4-5 (M.D. Fla. Aug. 13, 2024) ("The FSA itself does not tie a prisoner's eligibility to any specific BOP facility.").  The Court therefore rejects Respondent's argument that the regulation can override the statute's definition of when a sentence commences for purposes of ETC eligibility and finds Petitioner was statutorily

---

[6] Petitioner also asserts eligibility to earn FSA ETCs beginning April 5, 2021, apparently because it followed the jury verdict and his detention pending sentencing on April 2, 2021. *See* Crim. Docs. 216, 224. However, the FSA expressly precludes the accrual of ETCs during "official detention prior to the date the prisoner's sentence commences under section 3585(a)." § 3632(d)(4)(B).  Accordingly, and as discussed *supra*, Petitioner could not begin earning ETCs until his sentence commenced on August 27, 2021.

eligible to earn ETCs on August 27, 2021.

**2.  Successful Participation in Programming**

The Court turns to Respondent's additional argument—that it "would be anomalous to read the FSA to require BOP to give inmates time credits for participation in evidence-based recidivism reduction programs before BOP has a chance to even evaluate the inmates and assign them to such programs" before they arrive at their BOP-designated facility.  This argument mirrors reasoning adopted by several district courts.  As noted above, courts acknowledge a tension between the statutory language and BOP regulations concerning the "commencement of a sentence," yet nevertheless conclude that the BOP's interpretation "of this aspect of the FSA is consistent with the statutory language and intent of the [FSA], when viewed as a whole, because other provisions of the [FSA] do not provide for earning of [ETCs] until a prisoner has been assessed and approved for specific programming."  *Williamson v. Warden*, FPC Alderson, 2025 WL 2639884, at \*6 (S.D.W.V. July 25, 2025); *see also Shemtov v. Birkholz*, 2025 WL 1490543, at \*5 (C.D. Cal. Mar. 13, 2025), *report and recommendation adopted*, 2025 WL 1489545 (C.D. Cal. May 22, 2025) ("it is evident that the statute, read as a whole, contemplates participating in programming that the BOP has individually assigned to each inmate based on that inmate's risk and needs assessment"); *Jackson v. Federal Bureau of Prisons*, 2026 WL 512262, at \*3 (D. Or. Jan. 26, 2026 ("Given that Congress delegated the BOP with the authority to develop and administer this system, and left undefined what constitutes "successful participation" in programming, the BOP reasonably acted within its authority in awarding FSA credits to prisoners only for those periods after their initial risk and needs assessment, a function that occurs upon the prisoner's arrival at their BOP-designated facility.").

The Court finds this reasoning extends beyond Petitioner's narrow ground for relief, which is limited to the alleged conflict between the statutory language and BOP's regulatory interpretation of when a term of imprisonment "commences" for purposes of eligibility to earn ETCs.  Whether Petitioner has "successfully participated" in programming pursuant to authority delegated to the BOP after the term of imprisonment has commenced under the FSA is a separate issue, to be addressed by the BOP in the first instance. 18 U.S.C. § 3632(d)(4)(A).  Nothing in

this order precludes BOP from denying credits for periods in which Petitioner did not 'successfully participate' in qualifying programming; the Court holds only that BOP may not redefine when a sentence 'commences' for purposes of statutory eligibility.

The FSA requires the Attorney General, through the BOP, to develop a risk and needs assessment system to determine appropriate programming and assign inmates accordingly, and the BOP's regulations define "successful participation" in qualifying programs.  18 U.S.C. § 3632(a)(3), (b).  In 2022, the BOP promulgated regulations that an inmate earns ETCs only for successful participation in programming that BOP has recommended based on the inmate's individualized risk and needs assessment.  28 C.F.R. § 523.41(c)(1)-(2).

Respondent's motion focuses solely on the argument that Petitioner was ineligible to earn ETCs prior to his arrival at FCI Mendota on December 15, 2021, and does not address whether Petitioner successfully participated in any qualifying programming or productive activities between August 27, 2021, and December 14, 2021.  Likewise, Petitioner presents no evidence demonstrating successful participation during this period; instead, he seeks an immediate credit of 54 days of ETCs based solely on the time elapsed.

Whether Petitioner engaged in and successfully completed qualifying programming after his sentence commenced is a factual determination committed in the first instance to the BOP, applying the statutory and regulatory framework.  Because the record does not establish that Petitioner successfully participated in qualifying programming from August 27, 2021, through December 14, 2021, the Court denies his request for an immediate, fixed award of 54 days of ETCs.  However, Respondent must recalculate Petitioner's ETCs using August 27, 2021, as the date his ETC eligibility began, and make an individualized determination of any credits earned during that period.

Accordingly, IT IS ORDERED:

1.  Respondent's Motion to Dismiss (Doc. 11) is DENIED.

2.   The Petition (Doc. 1) is GRANTED IN PART and DENIED IN PART.

3.  Respondent is directed to (a) determine whether Petitioner successfully participated in qualifying programming or productive activities under 18 U.S.C. § 3632(d)(4) during

9

the period August 27, 2021 through December 14, 2021, and (b) recalculate Petitioner's ETCs accordingly, utilizing August 27, 2021 as the date on which Petitioner because eligible to start earning FSA ETCs.

4. The Clerk of Court is directed to terminate any pending motions and close this case.

Dated:   May 11, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

10